# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASCOT SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MASON, GRIFFIN & PIERSON, P.C. and IAN T. HAMMETT, ESQ<br><br>Defendants. | Civil Action No: _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>*Document Filed Electronically* |

Plaintiff, Ascot Specialty Insurance Company ("Ascot"), by way of Complaint for Declaratory Judgment against Defendants, Mason Griffin & Pierson, P.C. ("MGP") and Ian T. Hammett, Esq. ("Mr. Hammett") (collectively the "Firm"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action seeking a declaratory judgment and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Ascot seeks a judicial declaration that it is not obligated to defend or indemnify the Firm, under a Lawyers Professional Liability Insurance Policy issued to MGP, who is the Named Insured, and Ian T. Hammett , Esq. in connection with an underlying malpractice lawsuit arising from the Firm's legal services related to their practice.

3. Ascot seeks a declaration that there is no obligation to defend or indemnify the Firm under the Ascot Policy in the underlying lawsuit because prior to the inception of the first Ascot Policy issued to MGP on April 26, 2021, the Firm knew or should have foreseen that its Wrongful Acts, of which they were aware, might reasonably be expected to be the basis of a claim.

## THE PARTIES

**A.   Plaintiff**

4. Ascot is a Rhode Island corporation and has its principal place of business at 55 W. 46th Street, New York, New York.

**B.   Defendants**

5. Upon information and belief, MGP is a law firm organized as a professional corporation under the laws of the State of New Jersey, with its principal place of business located at 101 Poor Farm Road, Princeton, New Jersey 08540.

6. Upon information and belief, Mr. Hammett is a resident of the State of New Jersey.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, §2201 and §2202 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) the matter is between citizens of different states.

8. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, MGP maintains its principal place of business in this judicial district, Mr. Hammett is a resident of this judicial district, and the underlying action also occurred in this judicial district.

## THE UNDERLYING ACTIONS

**A.   The Probate Action**

9. Mr. Hammett joined MGP in 2018 and remains affiliated with MGP.

10. On December 14, 2020, the Estate of Charles Gilbert filed a Verified Complaint captioned *In the Matter of The Estate of Jane V. Gilbert, deceased* in the Superior Court of New

Jersey Chancery Division – Probate Part, Mercer County, Docket No. 19-01701 ("the Probate Action").  The Complaint filed in the Probate Action is attached as "**Exhibit A**".

11. It was alleged in the Probate Action that Charles and Jane Gilbert married in 1987.

12. It was alleged in the Probate Action that, at the time they married, Charles had been divorced and had three children.

13. It was alleged in the Probate Action that Jane passed away on November 4, 2019.

14. It was alleged in the Probate Action that Charles passed away on January 7, 2020.

15. It was alleged in the Probate Action that, before his death, Charles was diagnosed with Parkinson's Disease that resulted in him becoming cognitively impaired before Jane's Death.

16. It was alleged in the Probate Action that as Charles's cognitive abilities became more impaired, Jane improperly transferred assets belonging to Charles's estate plan to benefit herself, her sister Laura, and two of her best friends.  It was also alleged that from 2013 to 2018, Mr. Hammett assisted in the misappropriation of these assets.

17. On February 21, 2020, after Charles's death, counsel for the Estate of Charles Gilbert, sent a letter to Mr. Hammet requesting a copy of his file concerning the legal services he provided to Charles and Jane Gilbert ("the Request Letter").  In the Request Letter, counsel advised Mr. Hammett of the Estate of Charles's contentions and allegations that Jane Gilbert had misappropriated assets that belonged to Charles Gilbert's Estate.  A copy of the Request Letter is attached as **"Exhibit B"**.

18. On August 3, 2020, counsel for the Estate of Charles Gilbert filed a Proof of Claim, again detailing the claims against the Estate of Jane Gilbert ("the Proof of Claim").  The Proof of Claim referenced the fact that: (1) net proceeds of the sale of certain real estate that belonged to Charles' Estate had been misappropriated; (2) Jane misused Charles' funds to pay liabilities

associated with the ownership of certain thoroughbred horses; (3) Jane misappropriated assets in Charles' Wells Fargo brokerage account; (4) Jane misappropriated assets from Charles's RBC Wealth Management account; and (5) claims related to the value of a South Carolina property that Jane also allegedly misappropriated.  A copy of the Claim Letter is attached as "**Exhibit C**".

19. On December 14, 2020, the Verified Complaint in the Probate Action was filed, seeking, *inter alia*, monetary damages against Jane's Estate for the alleged tortious transfer of assets from Charles to Jane's Estate through the use of "undue influence and breach."

20. The Verified Complaint in the Probate Action also sought,

> An order disqualifying counsel for Jane's Executor [Ian Hammet], who previously jointly represented both decedents, on the grounds of conflict of interests, and his knowing and intentional facilitation of the tortious transfers that are subject of the First Counts.

21. Prior to the filing of the malpractice action, the Firm eventually withdrew as counsel for the Estate of Jane Gilbert.

B.   The Malpractice Action

22. On January 10, 2023, Charles's Estate filed the Malpractice Action, captioned *C. SCOTT GILBERT and DANA TUTTLE, Co-Executors of the Estate of Charles B. Gilbert, Jr. v. LAURA BRADSHAW; IAN T. HAMMETT, ESQ.; MASSON GRIFFIN & PIERSON. PC; and CYNTHIA G. REESE*, in the Superior Court of New Jersey Law Division: Mercer County, docket number MER-L-000106-23.  A copy of the Malpractice Action Complaint is attached as **"Exhibit D"**.

23. The Malpractice Action's Complaint refers to the Verified Complaint in the Probate Action as a "related case" and that both actions are "based on the same transactional facts."

4

24. In the Second Count of the Complaint in the Malpractice Action, plaintiffs assert a cause of action against Mr. Hammet for legal malpractice, generally alleging that he knowingly and intentionally abetted Jane's tortious misappropriation of Charles's assets and/or negligently aided in such appropriation.

25. In the Third Count of the Complaint in the Malpractice Action, plaintiffs assert a cause of action against MGP based on the fact that Mr. Hammet has been an attorney with the firm since 2018.

26. MGP and Hammet were served with the Malpractice Action Complaint on or about January 12, 2023.

## THE ASCOT POLICY

27. Ascot issued a Lawyers Professional Liability Insurance Policy, Policy No.: LPPL2210000434-02, to the Firm, as a Named Insured, incepting April 26, 2022, and expiring April 26, 2023, which was a renewal of the first policy Ascot issued to the Firm, which incepted on April 26, 2021.  The "Ascot Policy" is attached as **"Exhibit E"**.

28. The Ascot Policy has a limit of liability of $3,000,000 Per Each Claim and in the Aggregate and includes a $25,000 per claim retention.

29. The Insuring Agreement language of the Ascot Policy, provides in pertinent part as follows:

> In consideration of the payment of premium, and in reliance upon the **Application** that is made part of this Policy, and subject to the Declarations, limitations, conditions, exclusions and all terms of this Policy, the **Company** and all **Insureds** agree as follows:
>
> **I. Insuring Agreement**
>
> **A. General Coverage Grant**
>
> The **Company** shall pay **Damages** and **Claim Expenses** in excess of the **Retention** and subject to the Limits of Liability set forth in the Declarations, that an **Insured** becomes legally

5

obliged to pay as result of a **Claim** made against an **Insured** arising out of a **Wrongful Act** that is first made during the **Policy Period** or any **Extended Reporting Period**.

It is a condition precedent to coverage under this Policy that the **Wrongful Act** that is the basis of any **Claim** must have occurred:

1. During the **Policy Period**; or

2. On or after the **Retroactive Date** set forth in the Declarations and prior to the **Policy Period**, provided that all of the following conditions are met:

    a. The **Insured** did not notify any prior insurer of said **Wrongful Act** or **Related Circumstances**; and
    b. Prior to the inception of the first Policy issued by the **Company**, if continuously renewed, no **Insured** has any basis (1) to believe that any **Insured** breached the professional duty; or (2) to foresee that such **Wrongful Act** or **Related Circumstances** might reasonably be expected to the basis of a **Claim** against any **Insured**; and
    c. There is no other policy or insurer that provides coverage to any **Insured** for said **Wrongful Act**.

30. The Ascot Policy contains the following definition in Section XII. Definitions:

    J. **Insured** means: . . .

    2. any lawyer or professional corporation listed in the **Application** on the day the **Policy Period** incepts until such time the lawyer or professional corporation ceases to be a member of the **Named Insured**, but only in the performance or failure to perform **Legal Services** on behalf of the **Named Insured**;

31. The Ascot Policy contains the following condition in Section IX. General Conditions:

6

A.  APPLICATION

By issuing this Policy, the **Company** has relied upon the statements and information contained in the **Application**.

By accepting this Policy, every **Insured** acknowledges and agrees:
1. that the statements and information contained in the **Application** are true and accurate as of the Inception Date of the Policy; and
2. that the **Application** provided by the **Insured** was material to the Company's issuance of the Policy; and
3. that the Policy was issued in reliance upon the truth and accuracy of the **Application**.

If any material statements and/or information contained in the **Application** is false or misleading as of the Inception Date of the Policy, this Policy shall be *void ab initio*.

32. The Ascot Policy contains the following condition in Section IX. General Conditions:

K.  ENTIRE AGREEMENT

All **Insureds** agree that this Policy, the **Application** and any endorsements constitute the entire agreement between all **Insureds** and the **Company**.

33. On April 26, 2021, prior to the inception of the first policy issued to the Firm by Ascot, Shawn Neufled, the President of MGP, signed the Application for insurance from Ascot and a Warranty Statement, attached as **"Exhibit F"**, that provided as follows:

NOTICE: It is agreed by all concerned that if any of the proposed Insured Persons is responsible for or has knowledge of any Wrongful Act, fact, circumstance, or situation which s(he) has reason to suppose might result in a future Claim, whether or not described above, any Claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance. . . .

**WARRANTY STATEMENT**

The Applicant … declares and warrants that after diligent inquiry of each Principal, Partner, Managing Member, Director or Officer of the Firm, no claim(s) or suit(s) have been made against the Firm, or against the corporate entity, or any predecessor corporate entity, other than claims/circumstance/matters that have already been reported to an insurance carrier. The Firm declares and warrants that no Principal, Partner, Managing Member, Director or Officer of the Firm or corporate entity has

7

a basis to believe that any fact, circumstance, incident, error, situation or omission might reasonably be expected to be the basis of a claim being made against the Firm, or against the corporate entity, or any predecessor corporate entity.

The Firm further declares and recognizes that this warranty and declaration is material to acceptance of the risk and that the Company reserves the right to rescind coverage of any Policy that is issued to the Firm if the statements set forth herein are erroneous for any reason. Furthermore, in the event the declarations in the preceding paragraph are not true in respect to a particular fact, circumstance, incident, act, error, or omission, then any Claim(s) or Disciplinary matter(s) arising out of or relating to such fact, circumstance, incident, act, error or omission shall not be covered by the Company.

## CLAIMS COMMUNICATIONS

34. The Firm notified Ascot of the claim by letter on or about January 18, 2023 ("the Notice Letter"). A copy of the Notice Letter is attached as **"Exhibit G"**.

35. On or about February 8, 2023, Ascot advised the Firm that Ascot denied any obligation to defend or indemnify them under the Ascot Policy ("the Disclaimer Letter"). A copy of the Disclaimer Letter is attached as **"Exhibit H"**.

36. Specifically, Ascot advised the Firm that coverage did not exist under the Ascot Policy based upon the Firm's prior knowledge of facts that might reasonably be expected to be the basis of a claim against them.

37. Almost a year later on or about January 31, 2024, Mr. Paul M. Bishop, Esq., on behalf of the Firm, requested that Ascot reconsider its position ("the Reconsideration Letter"). A copy of the Reconsideration Letter is attached as **"Exhibit I"**.

38. On February 13, 2024, Ascot advised the Firm that it would not change its position set forth in the February 8, 2023 ("the Response Letter"). A copy of the Response Letter is attached as **"Exhibit J"**.

## AS AND FOR A FIRST CAUSE OF ACTION

**(Declaratory Judgment That Ascot Has No Obligation to Defend and Indemnify the Firm in the Malpractice Action Based on the Firm's Prior Knowledge)**

39. Ascot repeats and realleges each and every allegation in Paragraphs 1 through 38 as if fully set forth at length herein.

40. As noted above, under the Ascot Policy, Ascot agreed to provide coverage to the Firm provided that "prior to the inception of the first Policy issued by the **Company**…no **Insured** has any basis (1) to believe that any **Insured** breached the professional duty; or (2) to foresee that such **Wrongful Act** or **Related Circumstances** might reasonably be expected to be the basis of a **Claim** against any **Insured**…"

41. The Firm was aware prior to the inception of the Ascot Policy of the alleged Wrongful Acts committed in its representation of Jane Gilbert and the Estate of Jane Gilbert (collectively "Mrs. Gilbert").

42. It was reasonable to expect that a Claim would be made against the Firm based upon Wrongful Acts of which the Firm was aware prior to the inception of the Ascot Policy.

43. Therefore, Ascot has no obligation to defend and indemnify the Firm in the Ortiz Action under the Ascot Policy.

## AS AND FOR A SECOND CAUSE OF ACTION

**(Declaratory Judgment That Ascot Has No Obligation to Defend and Indemnify the Firm in the Ortiz Action Based on the Firm's Breach of the Warranty Statement)**

44. Ascot repeats and realleges each and every allegation in Paragraphs 1 through 43 as if fully set forth at length herein.

45. The Application and Warranty Statement reflects the Firm's agreement that the Ascot Policy shall not provide any coverage for any Wrongful Act, fact, circumstance, or situation

9

that, as of the date of the Application, any proposed Insured Person is aware from which a Claim emanates.

46. In the Application, the Firm warranted that "no Principal, Partner, Managing Member, Director or Officer of the Firm or corporate entity has a basis to believe that any fact, circumstance, incident, error, situation or omission might reasonably be expected to be the basis of a claim being made against the Firm, or against the corporate entity, or any predecessor corporate entity."

47. The Firm was aware prior to the inception of the Ascot Policy of the alleged Wrongful Acts committed in its representation of Mrs. Gilbert.

48. It was reasonable to expect that a Claim would be made against the Firm based upon Wrongful Acts of which the Firm was aware prior to the inception of the Ascot Policy.

49. The Firm has breached the warranty it made in its Application for insurance from Ascot.

50. Therefore, Ascot has no obligation to defend and indemnify the Firm in the Malpractice Action under the Ascot Policy

**WHEREFORE**, Plaintiff, Ascot Specialty Insurance Company, respectfully requests this Court enter judgment in its favor and against the Firm, as follows:

    a.    on the First Cause of Action, declaring that Ascot has no duty to defend or indemnify the Firm with regard to the Ortiz Action under the Ascot Policy based on the Firm's breach of the condition for coverage set forth in the Insuring Agreement of the Ascot Policy;

    b.    on the Second Cause of Action, declaring that Ascot has no duty to defend or indemnify the Firm with regard to the Ortiz Action under the Ascot

Policy based on the Firm's breach of the warranty set forth in the Application;

c. such other and further necessary or proper relief as the Court deems just.

Dated: Morristown, New Jersey
April 9, 2023

**COUGHLIN MIDLIGE & GARLAND LLP**

By: */s/Adam M. Smith*
Adam M. Smith, Esq.
Manuel A. Ruiz, Esq.
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07960
Tel: (973) 267-0058
Fax: (973) 267-6442
Email: asmith@cmg.law
mruiz@cmg.law
*Attorneys for Plaintiff*
*Ascot Specialty Insurance Company*