<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ASCOT SPECIALTY INSURANCE COMPANY**, <br><br> Plaintiff, <br><br> v. <br><br> **MASON, GRIFFIN & PIERSON, P.C.,** *et al.*, <br><br> Defendants. | Civil Action No. 24-4712 (ZNQ) (TJB) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon Cross Motions for Judgment on the Pleadings filed by Plaintiff Ascot Specialty Insurance Company ("Ascot" or "Plaintiff") (ECF No. 17) and Defendants Ian T. Hammett, Esq. and Mason, Griffin & Pierson, P.C. ("Defendants") (ECF No. 18). Plaintiff filed a brief in support of its Motion and various exhibits. ("Plaintiff's Moving Br.," ECF No. 17-1.)[1] Defendants filed a brief in support of their Motion. ("Defendants' Moving Br.," ECF No. 18-1.) Plaintiff filed a brief in opposition to Defendants' Motion

---

[1] Plaintiff also submitted (1) a complaint in *In the Matter of The Estate of Jane V. Gilbert*, in the Superior Court of New Jersey, Probate Part, Mercer County, Docket No. 19-01701 (the "Probate Action") (ECF No. 17-3); (2) a complaint in a malpractice suit filed by Scott Gilbert and Dana Tuttle against Laura Bradshaw, Ian T. Hammett, and Mason, Griffin & Pierson, P.C. in the Superior Court of New Jersey Law Division, Mercer County, Docket No. MER-L-000106-23 (the "Malpractice Action") (ECF No. 17-4); (3) Ascot's Lawyers Professional Liability Insurance Policy issued to Mason, Griffin & Pierson, P.C. (ECF No. 17-5); (4) a General Liability Notice of Occurrence/Claim Form indicating that Ascot was notified of the Malpractice Action (ECF No. 17-6); (5) a letter by Ascot stating that it denied an obligation to defend or indemnify Defendants (ECF No. 17-7); (6) a reconsideration letter from Defendants asking Ascot to reconsider its position on indemnification (ECF No. 17-8); (7) another letter from Ascot informing Defendants that it will not change its position (ECF No. 17-9); (8) the Complaint in this matter (ECF No. 17-10), and (9) Defendants' Answer and Counterclaim to the Complaint (ECF No. 17-11).

1

("Plaintiff's Opp'n Br.," ECF No. 19), and Defendants filed a Reply Brief ("Defendants' Reply Br.," ECF No. 22). Plaintiff also filed a Sur-Reply.[2] ("Plaintiff's Sur-Reply," ECF No. 23.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[3] For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Plaintiff's Motion and **DENY** Defendants' Cross-Motion.

I.  **BACKGROUND AND PROCEDURAL HISTORY**[4]

Plaintiff filed its initial Complaint in this Court on April 9, 2024 against Mason, Griffin & Pierson, P.C. (the "Firm") and Ian T. Hammett, Esq. ("Hammett"), a lawyer at the Firm, seeking a declaratory judgment under 28 U.S.C. §§ 2201 and 2202. (*See generally* "Compl.," ECF No. 1.) Plaintiff seeks a declaratory judgment that it is "not obligated to defend or indemnify Defendants under a Lawyers Professional Liability Policy" (the "Policy," ECF No. 17-5).

A.  **FACTUAL BACKGROUND**

The facts involve two state court matters between the estates of Charles and Jane Gilbert. Prior to their death, Charles Gilbert ("Charles") and Jane Gilbert ("Jane") were married. (*See generally* Compl.) Jane died testate in November 2019. (*See* ECF No. 1-1 ¶ 1.) Charles died testate in January 2020. (*Id.* ¶ 3.) On August 3, 2020, after Charles died, the Estate of Charles Gilbert filed a proof of claim against the Estate of Jane Gilbert, alleging that some of Charles's real estate and assets had been misappropriated by Jane. (Compl. ¶ 18.) On December 14, 2020, the Estate of Charles Gilbert filed a Verified Complaint in the Superior Court of New Jersey,

---

[2] The Sur-Reply was filed by Plaintiff as part of a Motion to Strike Portions of Defendants' Reply Brief. (ECF No. 23.) On March 4, 2025, the Court granted-in-part and denied-in-part the Motion to Strike and accepted Plaintiff's submission as its sur-reply. (ECF No. 24.)
[3] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[4] For the purposes of considering this Motion, the Court accepts "as true all facts presented in the complaint and answer and draw[s] all inferences in favor of the non-moving party[.]" *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019).

2

Probate Part (Docket No. 19-01701), alleging that Jane "improperly transferred assets belonging to Charles's estate plan to benefit herself, her sister Laura, and two of her best friends." (*Id.* ¶¶ 10, 16.) It was alleged in that suit that Hammett assisted Jane in the misappropriation of the assets. (*Id.*)

Unrelated, on April 26, 2021, Shawn Neufled, the President of the Firm, signed an Application for Insurance from Ascot and a Warranty Statement. (*Id.* ¶ 33.) The Application for Insurance provided in part:

> NOTICE: It is agreed by all concerned that if any of the proposed Insured Persons is responsible for or has knowledge of any Wrongful Act, fact, circumstance, or situation which s(he) has reason to suppose might result in a future Claim, whether or not described above, any Claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance. . . .

(*Id.*) Despite the Probate Action filed by Charles's Estate, Defendants declared in the Warranty Statement that the Firm had no claims or suits against it. (*Id.*)

That same day, Ascot issued its first Lawyers Professional Liability Insurance Policy (Policy No. LPPL2210000434-02) to Defendants, which it renewed on April 26, 2022, to expire one year later. (*Id.* ¶ 27.) The Policy had a $3,000,000 limit of liability for each claim and included a $25,000 per claim retention. (*Id.* ¶ 28.)

Relevant here, the Policy provided that

> [t]he Company shall pay Damages and Claim Expenses in excess of the Retention and subject to the Limits of Liability set forth in the Declarations, that an Insured becomes legally obligated to pay as a result of a Claim made against an Insured arising out of a Wrongful Act that is first made during the Policy Period or any Extended Reporting Period.

(Policy § I(A); Compl. ¶ 29.) The Policy also stated that

> [i]t is a condition precedent to coverage under this Policy that the Wrongful Act that is the basis of any Claim must have occurred:

3

>>1. during the Policy Period; or
>
>>2. on or after the Retroactive Date set forth in the Declarations and prior to the Policy Period, provided that all of the following conditions are met:
>
>>>a. the Insured did not notify any prior insurer of said Wrongful Act or Related Circumstances; and
>>>
>>>b. prior to the inception of the first Policy issued by the Company, if continuously renewed, no Insured has any basis (1) to believe that any Insured breached a professional duty; or (2) to foresee that any such Wrongful Act or Related Circumstances might reasonably be expected to be the basis of a Claim against any Insured;[5] and
>>>
>>>c. there is no other policy or insurer that provides coverage to any Insured for said Wrongful Act.

(*Id.*) Section IX provided that

>>[b]y issuing this Policy, the Company has relied upon the statements and information contained in the Application.
>
>>By accepting this Policy, every Insured acknowledges and agrees:
>
>>>1. that the statements and information contained in the Application are true and accurate as of the Inception Date of the Policy; and
>>>
>>>2. that the Application provided by the Insured was material to the Company's issuance of the Policy; and
>>>
>>>3. that the Policy was issued in reliance upon the truth and accuracy of the Application.
>
>>If any material statements and/or information contained in the Application is false or misleading as of the Inception Date of the Policy, this Policy shall be *void ab initio*.

(Policy § IX; Compl. ¶ 31.)

---

[5] This exclusion is known as the "prior knowledge exclusion."

On January 10, 2023, Charles's Estate filed a malpractice action against Defendants in the Superior Court of New Jersey, Mercer County, MER-L-000106-23. (*Id.* ¶ 22.) In that complaint, the plaintiff alleges that Hammett committed legal malpractice by "knowingly," "intentionally," or "negligently" assisting Jane in the tortious misappropriation of Charles's assets. (*Id.* ¶ 24.)

On January 18, 2023, eight days after Charles's Estate filed a malpractice claim against Defendants in state court, the Firm notified Ascot of the claim against it. (*Id.* ¶ 34.) On February 8, 2023, Ascot informed the Firm that it denied any obligation to defend or indemnify them under the Policy in part due to the prior knowledge exclusion. (*Id.* ¶ 35.) In January 2024, the Firm requested that Ascot reconsider its position, which it refused to do. (*Id.* ¶¶ 37, 38.)

### B.   PROCEDURAL HISTORY

Plaintiff asserts two causes of action in the Complaint based on the aforementioned Policy and Warranty Statement. The first is a declaratory judgment that Ascot has no obligation to defend and indemnify the Firm in the Malpractice Action based on the Firm's prior knowledge of Hammett's malpractice in assisting Jane in the misappropriation of Charles's assets (Count One). The second is a declaratory judgment that Ascot has no obligation to defend and indemnify the Firm based on the Firm's breach of the Warranty Statement (Count Two).

Defendants filed an Answer to the Complaint and asserted affirmative defenses and a counterclaim. (ECF No. 5.) The counterclaim seeks a declaratory judgment requiring Ascot to defend and indemnify Defendants in the Malpractice Action against them. (*Id.* ¶ 1.) Defendants allege that this action falls squarely within the definition of coverage for a claim under the Policy and that Ascot failed to perform a good faith investigation in the claim when it first denied coverage. (*Id.* ¶¶ 11, 23.) Defendants assert four causes of action: 1) a declaratory judgment for

5

defense costs; 2) a declaratory judgment for indemnity; 3) breach of contract; and 4) bad faith.[6] (*See generally id.*)

On July 22, 2024, Plaintiff filed an Answer to the Counterclaim. (ECF No. 9.) Thereafter, the parties filed the instant Motions for Judgment on the Pleadings.[7]

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (internal quotation marks and citation omitted).

In reviewing a motion for judgment on the pleadings, courts apply the same standard as when reviewing a motion to dismiss under Rule 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); *Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a

---

[6] Defendants withdrew Count Four of the counterclaim, which asserts bad faith. (Defendants' Moving Br. at 19.)
[7] As stated above, Plaintiff seeks a declaration that "Ascot has no duty to defend or indemnify the Firm" on the basis of a breach of a condition for coverage under the Policy (Count One) and/or on the basis of a breach of the warranty the Firm made in its application for insurance (Count Two). (*See* Compl. ¶ 50.) Plaintiff's Notice of Motion, however, merely seeks "an Order Declaring that Ascot is not obligated to provide a defense or indemnity to the Defendants under the terms and conditions of the Ascot Policy." (ECF No. 17.) Plaintiff's proposed order attached to its Motion likewise states only that "Ascot does not have a duty to defend or indemnify Defendants Mason, Griffin & Pierson, P.C. and Ian T. Hammett, Esq., with respect to the Underlying Action." (ECF No. 17-12.) Plaintiff's briefing is limited to Count One of the Complaint and does not discuss Count Two. For the reasons set forth in this Opinion, the Court will enter judgment in favor of Plaintiff as to only Count One because Plaintiff did not brief Count Two and because it provides the relief Plaintiff seeks. Accordingly, the Court does not reach Count Two.

complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). As such, "[a] complaint should not be dismissed unless it appears beyond doubt that the facts alleged in the complaint, even if true, fail to support the claim." *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 324 (D.N.J. 1999).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft*, 556 U.S. at 675). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## IV.    DISCUSSION

### A.    WHETHER THE PRIOR KNOWLEDGE EXCEPTION APPLIES

The parties dispute whether at the time of the filing of the Probate Action—December 14, 2020—Defendants should have either reasonably foreseen 1) the filing of a malpractice claim against them or 2) that an insured breached a professional duty, thereby relieving Ascot of its duty

to defend and indemnify pursuant to the prior knowledge exclusion in Section I of the Policy. This is a question of law that can be properly addressed on a motion for judgment on the pleadings. *See Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (judgment as a matter of law) ("Determination of the proper coverage of an insurance contract is a question of law." (quoting *Atlantic Mut. Ins. Co. v. Palisades Safety and Ins. Ass'n.*, 837 A.2d 1096, 1098 (2003))); *Darwin Nat. Assur. Co. v. Hellyer*, Civ. No. 10-50224, 2011 WL 2259801, at *4 (N.D. Ill. June 7, 2011) (judgment on the pleadings) (interpreting a similar exclusion and finding that "[t]ere is no factual dispute over what actions Hellyer took or that he had a financial interest in the transaction because of the benefit to Harmony Stone").

Plaintiff argues that it has no duty to indemnify Defendants because the Policy expressly states that it is a condition precedent to coverage that "no Insured ha[ve] any basis (1) to believe that any Insured breached their professional duty; or (2) to foresee that such Wrongful Act or Related Circumstances might reasonably be expected to be the basis of a Claim against any Insured." (Plaintiff's Moving Br. at 14 (quoting Policy § I(A)(2)(b)).) Plaintiff contends that "any reasonable attorney would have foreseen that [] Hammett's actions and the allegations" in the Probate Action could result in a claim against the Firm. (*Id.* at 16.)

Defendants argue that "whether a reasonable attorney in Hammett's shoes would have expected that the Probate Action would lead to a [malpractice] Claim under the policy is a question of genuine fact" not suitable for a motion for judgment on the pleadings. (Defendants' Moving Br. at 13.) Defendants also argue that their "relevant reasonable expectation was triggered by receipt of the Malpractice Action" on January 12, 2023, and not when the Probate Action was filed

8

in December 2020. (*Id.* at 14.)[8] Defendants emphasize that 1) the Probate Action did not include any direct legal malpractice claims against Hammett; and 2) the plaintiffs in the Probate Action amended their complaint to remove all claims against Hammett so a reasonable attorney would not except that a malpractice claim would arise. (Defendants' Reply Br. at 3–4.) In a Sur-Reply, Plaintiff argues that the removal of allegations against Hammett in the Probate Action in an amended complaint has no bearing on whether Defendants should have reasonably expected to foresee a claim against them. (Plaintiff's Sur-Reply at 3.)

As stated, this case involves interpretation of an insurance policy. Generally, "when interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 933 (N.J. 2005) (internal quotation marks and citation omitted). "If the policy language is clear, the policy should be interpreted as written, [but][i]f the policy is ambiguous, the policy will be construed in favor of the insured." *Id.* (internal citations omitted). Exclusions in an insurance policy, like the one at issue here, should be narrowly construed. *Id.* at 934 (citing *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 16 (1997)). The insurer has the burden of bringing the claim within the exclusion. *Princeton Ins. Co.*, 698 A.2d at 16–17. Nonetheless, "exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Id.* at 17 (quoting *Doto v. Russo*, 659 A.2d 1371, 1378 (1995)); *see also Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013–14 (1998) (finding that a policy exclusion precluded coverage because it was "clear and unambiguous" and not contrary to public policy).

---

[8] Defendants concede that "[t]he Probate Action, if anything, only made claims that Hammett was involved in an *intentional* operation to defraud the [Charles] Gilbert Estate, not that he had negligently provided legal services." (*Id.* at 13 (emphasis in original).)

9

The relevant exclusion at issue here provides that "[i]t is a condition precedent to coverage under this Policy that the Wrongful Act that is the basis of any Claim must have occurred" "on or after the Retroactive Date . . . , provided that all of the following conditions are met": "no Insured has any basis (1) to believe that any Insured breached a professional duty; or (2) to foresee that any such Wrongful Act or Related Circumstances might reasonably be expected to be the basis of a Claim against any Insured." (Policy § I(A).)

The purpose of a prior knowledge exclusion is to "protect [the insurer] . . . against the professional who, recognizing his past error or omission, rushes to purchase a 'claims made' policy before the error is discovered and a claim asserted against him." *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 403 n.3 (N.J. 1985); *see also Navigators Specialty Ins. Co. v. Scarinci & Hollenbeck, LLC*, Civ. No. 09-4317, 2010 WL 1931239, at *16 (D.N.J. May 12, 2010) ("An insurer cannot properly evaluate the risk of taking on an insured if it is not aware of the possibility of future claims. The possibility of these claims will necessarily impact the price at which the insurer will agree to take on the insured, as an insurer will incur costs in defending and indemnifying against future claims. . . .").

Here, the Probate Action, which is an action for the allowance of payment and to compel inventory of certain assets, references Hammett's breaches of his fiduciary duties and demonstrates that he could have committed misconduct to give rise to a later malpractice claim. The Probate Action, and more specifically, the references to Hammett therein, are relevant to whether Plaintiff must indemnify or defend against any malpractice claims covered by the Policy. *See Selko v. Home Ins. Co.*, 139 F.3d 146, 151 (3d Cir. 1998) ("No-one, not the insurer and not the insured, knows ahead of time what facts will give rise to liability. In order to properly allocate the risk, the

10

policy sensibly puts the burden on the insured to disclose those facts known only to him, so that the costs of the risk can be evaluated with all the relevant information accessible to all parties.").

When interpreting a prior knowledge condition, courts typically use a mixed subjective-objective test arising from the clear and unambiguous policy exclusion. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 233 (3d Cir. 2006) (applying New Jersey law); *Westport Ins. Corp. v. Mirsky*, 84 F. Appx. 199, 200–201 (3d Cir. 2003); *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 304 (3d Cir. 2001). As the United States Court of Appeals for the Third Circuit stated in *Colliers*, "[t]he first condition in the exclusion is satisfied if *the insured had knowledge* of the relevant suit, act, error, or omission." *Colliers*, 458 F.3d at 237 (emphasis in original). "The second condition in the exclusion, in contrast, is satisfied if the suit, act, error, or omission *might, reasonably be expected* to result in a claim or suit." *Id.* (emphasis in original). "This language does not require that the insured actually form such an expectation," but instead "gives rise to an objective test: whether a reasonable professional in the insured's position might expect a claim or suit to result." *Id.*

The parties thus ask the Court to apply this subjective-objective test set forth in *Collier*. (Plaintiff's Moving Br. at 16; Defendants' Moving Br. at 11; Defendants' Reply Br. at 2–4.) However, the exclusions in *Collier* and the case at bar—while both prior knowledge exclusions—are different. The exclusion at issue here omits the subjective component, and provides two objective ways for the exclusion to apply: 1) when an insured has no basis to believe that any insured breached a professional duty; or 2) when an insured cannot reasonably foresee that any such "Wrongful Act or Related Circumstances might reasonably be expected to be the basis of a Claim against any Insured." (Policy § I(A).) Because there is no subjective element to the

11

exclusion here, the Court's inquiry is limited solely to the objective test: whether a reasonable professional in the insured's position might expect a claim or suit to result.

For the reasons that follow, the Court finds that based on the allegations in the Probate Action, a reasonable attorney would 1) "believe that any Insured breached a professional duty"; or 2) "foresee that any such Wrongful Act or Related Circumstances might reasonably be expected to be the basis of a Claim against any Insured." (Policy § I(A).)

First, the Probate Action sought to disqualify Hammett for conflicts of interest and his "knowing and intentional facilitation of [] tortious transfers." (ECF No. 1-1 ¶ 4.) The Probate Action alleged that Hammett performed legal services for both Charles and Jane jointly for many years. (*Id.*) The complaint alleged that "Hammett intentionally withheld a large number of records from his files regarding legal services rendered to Charles and Jane." (*Id.* ¶ 22.) The Probate Action also alleged that "Hammett represented Jane and Charles in the sale of [a farm] and the purchase [of another property]. As their attorney he had a fiduciary duty to them both. There is however no trace in Jane[] and Charles['s] papers or in the file that Hammett turned over to plaintiffs' attorney of any indication that Hammett raised any question with Jane as to the propriety of using part of the proceeds of sale of October Farm to purchase their new residence." (*Id.* ¶ 33.) Moreover, the Probate Action specifically invoked Model Rule of Professional Conduct 1.14, and raised the prospect that Hammett unethically ignored Charles's disability. (*Id.* ¶ 53.) The Court finds that these allegations demonstrate that a reasonable attorney would either 1) believe that Hammett breached a professional duty, or 2) foresee that Hammett's actions might reasonably be expected to be the basis of a future claim against the insured.

The later Malpractice Action—which Defendants notified Plaintiff of—alleged similar claims to those in the Probate Action, further demonstrating that Defendants should have foreseen

12

malpractice claims against them. The main difference between the suits is that the Malpractice Action brought a formal claim for legal malpractice against Hammett, whereas the Probate Action merely sought a declaration that Hammett stop representing Jane, among other relief as to the estate's assets. Contrary to Defendants' position, a formal malpractice claim or a claim against Hammett in the Probate Action is not required to trigger the prior knowledge exclusion in the Policy. All that is required under the Policy exclusion at issue is that a reasonable person believe that a malpractice claim may arise or that an insured breached a professional duty.

The pleadings, thus, demonstrate as a matter of law that Defendants should have foreseen that "any such Wrongful Act or Related Circumstances might reasonably be expected to be the basis of a Claim against any Insured." *See Westport Ins. Corp. v. Jacobs & Barbone, P.A.*, Civ. No. 08-0801, 2009 WL 922023, at *4 (D.N.J. Mar. 31, 2009) (granting insurer's motion for summary judgment because "a reasonable professional in [the attorney's] position would have expected that a claim for malpractice was possible" when the attorney failed to serve a proper summons on the defendant); *Ehrgood v. Coregis Ins. Co.*, 59 F. Supp. 2d 438 (M.D. Pa. 1998) (finding that a "reasonable attorney . . . could . . . have foreseen that he would be subject to a malpractice claim based on the errors and omissions that led to the dismissal of the underlying action" where the attorney had failed to serve a proper summons); *Darwin Nat'l Assurance Co. v. Fahy Choi, LLC*, Civ. No. 13-7197, 2015 WL 12698440, at *14 (D.N.J. Dec. 18, 2015) (granting summary judgment because the defendants' interpretation of the phrase "if continuously renewed" was not reasonable); *Hellyer*, 2011 WL 2259801, at *4 (N.D. Ill. June 7, 2011) (granting judgment on the pleadings and finding that a reasonable attorney in the attorney's shoes would have acted differently); *Navigators Specialty Ins. Co.*, 2010 WL 1931239, at *16 (granting summary

13

judgment because "defendants had knowledge of acts, errors, or omissions that could reasonably be expected to form the basis of a claim against them").[9]

Accordingly, the Court will **GRANT** Plaintiff's Motion as to Count One.

### B. WHETHER ASCOT HAS A DUTY TO DEFEND UNDER THE POLICY

Defendants argue in their Cross-Motion that Ascot had an unambiguous duty to defend them in the Malpractice Action regardless of whether Ascot should indemnify Defendants because, under New Jersey law, the duty to defend is immediate upon receipt of a complaint. (Defendants' Moving Br. at 17–18.) Plaintiff maintains that it has no duty to defend Defendants because the Malpractice Action is not covered under the Policy given that Hammett likely breached a professional duty and the Firm should have foreseen the Malpractice Action. (Plaintiff's Opp'n Br. at 2.)

The duty to defend is "generally determined by comparing the allegations in the [malpractice] complaint with the language of the policy." *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1271 (N.J. 1992) (citing *Voorhees v. Preferred Mutual Insurance Co.*, 607 A.2d 1255, 1259 (N.J. 1992)). "The duty to defend, which is itself a meaningful benefit, is broader then the duty to indemnify." *Rosario ex rel. Rosario v. Haywood*, 799 A.2d 32, 40 (N.J. App. Div. 2002). "The duty is triggered when the complaint against the insured "states a claim constituting a risk insured against." *Id.* Notably, the duty to defend is centered on whether a "covered claim is made." *Id.* (citing *Voorhees*, 607 A.2d at 1259).

---

[9] Defendants argue solely in a footnote in their moving brief that "even if Ascot's prior knowledge exclusion can be extended to Hammett, the exclusion does not apply to" the Firm. (Defendants' Moving Br. at 15 n.2.) Defendants are incorrect. First, this Court is not obligated to consider an argument made in passing in a footnote. *See New Jersey v. United States Dep't of Transportation*, 761 F. Supp. 3d 729, 750 n.13 (D.N.J. 2024) (not reaching the plaintiff's arguments raised in footnotes because "arguments raised solely in footnotes are considered waived."); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d. Cir. 1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"). Second, Hammett was an attorney with the firm at the time the Policy was executed, and was employed by the firm at all times relevant to this litigation.

Here, the Policy at issue states:

> Subject to the Limits of Liability set forth in the Declarations, the Company shall have the right and duty to defend any Claim against an Insured that is covered by this Policy, subject to all terms and conditions, even if the allegations of the Claim are groundless, false or fraudulent. The Company's duty to defend shall terminate upon the exhaustion of the Limits of Liability by the payment of Claim Expenses and/or Damages.

(Policy § 4(A).) The key language in the Policy is that Plaintiff has a duty to defend "any Claim against an Insured that is covered by this Policy." (*Id.*) Because the Court has already determined that the Malpractice Action against Defendants is not "a covered claim" by the Policy, the Court finds that Plaintiff has no duty to defend Defendants under the Policy.

## V.     CONCLUSION

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Plaintiff's Motion. (ECF No. 17.) The Motion will be **GRANTED** as to Count One, and **JUDGMENT** will be entered in favor of Plaintiff and against Defendants. The Court will further declare that Plaintiff does not have a duty to indemnify or defend Defendants under the Policy with respect to this action. The Motion will be **DENIED** as to Count Two. The Court will also **DENY** Defendants' Cross-Motion. (ECF No. 18.) An appropriate Order will follow.

Date: August 18, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
